**SIGNED THIS: January 29, 2014**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Case No. 13-71433 |
| NORMAN E. COWGER and | ) | |
| JENNIFER R. COWGER, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

## O P I N I O N

The Debtors' First Amended Chapter 13 Plan is before the Court for confirmation. The

Chapter 13 Trustee has objected to confirmation, asserting that unsecured creditors will not receive

as much through proposed plan payments as they would receive if the case were proceeding under

Chapter 7. In response, the Debtors assert that no amount would be distributed to unsecured creditors

if they liquidated under Chapter 7, and that their position in that regard should be sustained as a

matter of law. The Trustee says that his position can also be sustained as a matter of law but if the

Court disagrees, he wants to conduct discovery and have an evidentiary hearing. Significant portions

of the dispute can and will be resolved as a matter of law. The Court will, however, set an

evidentiary confirmation hearing to ensure that all positions are fully heard.

### I. Factual and Procedural Background

Norman E. Cowger and Jennifer R. Cowger ("Debtors") filed their voluntary petition under

Chapter 13 on July 23, 2013. On September 26, 2013, they filed their First Amended Chapter 13

Plan ("Plan"). In their Plan, they propose to pay $188 per month to the Chapter 13 Trustee

("Trustee") for a period of 60 months. From the total of $11,280 expected to be received by the

Trustee, the Plan directs the Trustee to pay his own commissions, the Debtors' attorney fees of

$2700, and an auto loan to Land of Lincoln Credit Union. The Plan also provides that any funds

remaining after those disbursements should be distributed *pro rata* to unsecured creditors. The

Trustee estimates — and the Debtors do not dispute — that the funds remaining will be, at most,

$47.39.

The Trustee points out in his objection that the Debtors disclosed debt payments of $2000

made to each of their mothers during the year preceding the case filing. The Trustee claims that a

Chapter 7 trustee would identify the payments as preferential and recover at least $1500 of each

preferential payment for a total of $3000. According to the Trustee, after the deduction of statutory

fees, unsecured creditors in a Chapter 7 liquidation would then receive $2250. Because that amount

is more than the Debtors are proposing to pay to unsecured creditors through their Plan, the Trustee

says that the Plan is not confirmable.

The Debtors respond that because of the significant costs involved in preference litigation,

Chapter 7 trustees usually do not pursue small preference actions. The Debtors suggest that when

the initial amount for collection is so small, little is likely to be left to distribute to creditors after

paying filing fees, attorney fees, and other costs. Further, Debtors claim that the payment of their

own attorney fees through the Plan should be considered as part of the distribution to unsecured

creditors. If the $2700 in attorney fees is considered, Debtors argue that, even under the Trustee's

calculations, they are paying more through the Plan than would be distributed under Chapter 7.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. Core

proceedings include decisions about the confirmation of plans. *See* 28 U.S.C. §157(b)(2)(L).

## III. Legal Analysis

### A. The Best Interests of Creditors Test Requires Review of
### All Expenses Associated with Estate Administration

In order to obtain confirmation of their Plan, the Debtors must comply with the so-called

"best interests of creditors" test by establishing that unsecured creditors will receive as much through

Plan distributions as they would if the Debtors liquidated under Chapter 7. Specifically, the Code

provides:

> **§ 1325. Confirmation of plan**
>
> (a) Except as provided in subsection (b), the court shall confirm a plan if -
>
> . . . .
>
> (4) the value, as of the effective date of the plan, of property
> to be distributed under the plan on account of each allowed unsecured
> claim is not less than the amount that would be paid on such claim if
> the estate of the debtor were liquidated under chapter 7 of this title on
> such date[.]

11 U.S.C. §1325(a)(4).

To meet the requirements for plan confirmation, debtors complete a hypothetical liquidation analysis to estimate what would be available for distribution to unsecured creditors in a Chapter 7 case. The hypothetical liquidation analysis starts with a calculation of the value of the assets which would be liquidated, followed by the subtraction from that amount of the costs associated with the liquidation and with the administration of the case under Chapter 7. *See In re Trombetta*, 383 B.R. 918, 924 (Bankr. S.D. Ill. 2008). Administrative and priority claims are then also subtracted in order to determine the net amount left for distribution on unsecured claims. *Id.*; *see also* 11 U.S.C. §726(a) (administrative and priority claims are paid in full before distributions to allowed unsecured claims).

Here, the only assets in question are the two payments made by the Debtors to their mothers during the year preceding the case filing. Chapter 7 trustees generally can avoid and recover a debt payment made by a debtor to an insider creditor during the year before filing if such payment was at least $600, was made when the debtor was insolvent, and the payment allowed the creditor to receive more than the creditor would have received through a Chapter 7 liquidation. *See* 11 U.S.C. §547(b). The exercise of such trustee avoidance powers "promotes the 'prime bankruptcy policy of equality of distribution among creditors' by ensuring that all creditors of the same class will receive the same pro rata share of the debtor's estate." *In re Smith*, 966 F.2d 1527, 1535 (7th Cir. 1992) *quoting* H.R.Rep. No. 595, 95th Cong., 2d Sess. 177-78 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6137-39.

In deciding whether to pursue litigation such as a preference action, Chapter 7 trustees must undertake a cost/benefit analysis considering not only the potential recovery but also the potential loss if the litigation is unsuccessful. *See In re Wildman*, 72 B.R. 700, 707 (Bankr. N.D. Ill. 1987). Neither Chapter 7 trustees nor their attorneys have a duty to collect assets when the costs of collection exceed the value to the estate of the collection. *See In re Taxman Clothing Co.*, 49 F.3d

310, 315 (7th Cir. 1995). To the contrary, Chapter 7 trustees and their lawyers have a duty to abandon burdensome assets and burdensome litigation. *Id.*; *see also* 11 U.S.C. §554. Chapter 7 trustees should not pursue preference claims where the amount in controversy does not justify the costs. *See In re Minich*, 386 B.R. 723, 728-29 (Bankr. C.D. Ill. 2008). The hypothetical liquidation analysis undertaken in Chapter 13 cases must follow these same principles. If a Chapter 7 trustee would abandon an asset, then there is no amount required to be paid to unsecured creditors through a Chapter 13 plan for that asset. *See In re Sharp*, 394 B.R. 207, 212-13 (Bankr. C.D. Ill. 2008).

Little information is available regarding the preference claims at issue here. The Debtors disclosed payments to "Norman's Mother" and "Jennifer's Mother" at paragraph 3c of their Statement of Financial Affairs which requests information about payments made to insiders during the one year before filing. Each payment is listed in the amount of $2000. The Trustee alleges that the Debtors have conceded all issues required to establish that the payments are avoidable preferences. The Debtors do not directly dispute that the payments were preferential. Rather, the dispute is whether a Chapter 7 trustee would pursue such small assets. The Trustee concedes that a Chapter 7 trustee would have his or her own statutory fees as an expense charged against any recovery but disputes that other expenses would generally be involved. The Debtors assert that Chapter 7 trustees routinely incur attorney fees, court costs, and numerous other expenses in pursuing preference claims. The Debtors' argument paints the more realistic and accurate picture of what customarily occurs in such cases.

Chapter 7 trustees are not obligated to include legal, accounting, appraisal, or other professional work in the duties for which they receive their statutory compensation. To the contrary, they are entitled to retain professionals who then are entitled to separate compensation. *See* 11 U.S.C. §327; Fed. R. Bankr. P. 2014. The practice before this Court is that Chapter 7 trustees virtually

always retain themselves or other attorneys in their own firms to represent them in all litigation matters, including preference actions. Applications to employ attorneys are routinely filed immediately upon the discovery of potential causes of action. When preference claims are expected to be brought, the trustees frequently ask that their attorney be paid a contingency fee of one-third of any recovery. Alternatively, they may seek to hire counsel on an hourly rate basis with fees ranging from $175 to $250 per hour. Applications to employ generally also provide that the trustee's attorney will be entitled to reimbursement for costs and out-of-pocket expenses.

The current filing fee for an adversary complaint is $293. And, as the Debtors correctly point out, because of the location of their residence, the Chapter 7 trustee who would most likely be assigned to their case has offices in Decatur, Illinois. Thus, the Chapter 7 trustee and his attorney would likely charge mileage for court appearances in Springfield, Illinois, associated with any preference litigation. Other expenses could include witness fees, court reporter fees, copy costs, and the like.

In addition to the direct litigation costs, there are other costs of administration which are paid by Chapter 7 trustees and must be considered. Chapter 7 trustees are now charged monthly bank service fees. The minimum fees are usually $10 or $25 per month depending on the particular trustee's vendor relationship. Generally, trustees require not less than six months to administer an estate and, at the very low end, bank fees charged on Chapter 7 trustee final reports are rarely below $60 to $150. Frequently, the fees are much higher because money is often held on account for longer periods of time.

Additionally, Chapter 7 trustees pay copy and postage costs associated with the administration of the estate. A Chapter 7 trustee would have to notice an application to employ and the compensation application for any professional fees to be paid and would have to notice an intent to

compromise if the preference action was settled for a sum less than the full amount claimed. A Chapter 7 trustee must also notice the final report. Copy and postage costs vary, but usually are in the $.75 to $1.00 range per entity noticed for employment, compensation, or compromise issues. The costs for a final report are usually at least $1.50 per entity noticed.

Costs for bank fees, copying, and postage are the legitimate costs of doing business for Chapter 7 trustees. Generally, the costs are small in comparison to the assets of the estate and frequently are not a consideration in deciding whether to pursue an asset. But here, where the maximum potential recovery is modest by any standard, these costs must be considered and, in fact, would be considered by a Chapter 7 trustee in making the required cost/benefit analysis before proceeding.

The practical effect of considering costs associated with litigation and estate administration are best shown through an actual calculation of the hypothetical liquidation analysis. The maximum amount recoverable from each potential defendant here is the $2000 preferential payment plus the $293 filing fee or a total of $2293. From that amount, subtracting $666 as a one-third contingency fee for a Chapter 7 trustee's attorney (with no percentage charged for the collection of costs), the $293 filing fee, and $573.25 for the Chapter 7 trustee's statutory commission leaves $760.75. Estimating the mileage cost of one round trip from Decatur to Springfield for the trustee and one for his attorney at $44 per trip or a total of $88, bank fees at $100, and copy and postage charges at $150 results in total other costs of $338. Subtracting that amount from the $760.50 leaves $422.50 for distribution to unsecured creditors. Analysis of the second preference claim would be the similar, resulting in a maximum estate of $845 for distribution to unsecured creditors.[1]

---

[1] The Internal Revenue Service originally filed a priority claim for $330 but has since amended the claim to zero. The Illinois Department of Revenue has filed a claim for $.01 which, because of its size, will not be considered in the hypothetical liquidation analysis. No administrative

By this Court's standards, $845 is too small of a net estate to administer, particularly in view

of the fact that the successful prosecution of two adversary complaints would be required to generate

that amount. More importantly, creating such a small estate by the collection of preferences does not

serve the public policy behind trustee avoiding powers. The calculation above assumes the collection

of $4586 by a Chapter 7 trustee with only $845 of that amount going to creditors. That means that

82% of the funds collected would be used to pay expenses and only 18% would be divided among

unsecured creditors. That result does not serve the purpose of recovering preferences to ensure the

equality of distributions to creditors. *See Smith*, 966 F.2d at 1535. Preferences should be recovered

when the recovery will be sufficient to make some meaningful redistribution of the funds. No public

policy is served when a preferential payment is recovered but the bulk of the recovery is consumed

by fees and costs.

Important to this analysis is the fact that the above numbers represent an absolute best-case

scenario. The analysis assumes that both defendants pay the full preference amount plus costs almost

immediately after being sued. Such a result is not necessarily typical and, accordingly, should not be

presumed to be the analysis that a Chapter 7 trustee would use in deciding whether to pursue

preference litigation. A Chapter 7 trustee would weigh the possibility of other, less favorable

outcomes in deciding whether to proceed.

The Trustee suggests that a likely outcome would be that each case would settle for $1500.

It is unclear why the Trustee suggests that particular outcome but, in a general sense, settling a $2000

debt for $1500 is within the realm of reason. But, after expenses, such a settlement does not yield a

meaningful recovery. If, from the $1500 settlement, subtractions were made for $500 for the one-

claims have been filed. The issue of how the Debtors' attorney fee payments figure into the analysis
will be discussed in detail elsewhere in this Opinion.

third contingency attorney fee, $375 for the trustee fees, $293 for court costs, and the $338 estimated

for other expenses, nothing would be left to distribute to unsecured creditors. Even if the settlement

were assumed to have occurred without the filing of litigation and the expenditure of the filing fee,

the amount left after other expenses in each case would be $287, for a total net estate of $574. Again,

this amount is well below the amount necessary to justify the administration of an estate.

None of the other variables a Chapter 7 trustee might consider adds anything positive to the

equation. The most problematic issue in deciding to pursue litigation is trying to discern from limited

information whether the preference will ultimately be collectible from the potential defendant.

Perhaps a defendant would concede liability but have limited ability to pay. Even if installment

payments can be agreed to, it could take years to collect the funds, which would result in more bank

fees incurred and, potentially, other charges made against the estate. And, if one defendant paid but

the other did not, the costs of the unsuccessful action would have to be paid from the funds generated

by the successful case, thereby reducing the already limited return for that case.

When a preferential payment is made to a bank or other financial institution, a Chapter 7

trustee may have some confidence that, if liability is established, the resulting judgment will be

collectible. But, when the potential defendant is an individual, there is no assurance that a judgment

will be collectible. And, the ability of a Chapter 7 trustee to find out about the financial condition of

a potential individual defendant is limited by the general rule that pre-judgment discovery about a

defendant's financial affairs is prohibited when the purpose is to determine whether a final judgment

will be collectible rather than to establish an element of liability. *See Piller v. Perftech*, *Inc.*, 2011

WL 2293363, *3-4 (N.D. Ill. June 9, 2011); *Board of Educ. of Evanston Tp. High School Dist. No.

202 v. Admiral Heating and Ventilating, Inc.*, 104 F.R.D. 23, 33 (N.D. Ill. 1984).

Although a Chapter 7 trustee might ask a debtor at the meeting of creditors about the insider

to whom a payment was made to find out what the debtor knows about the insider's financial condition, wholesale discovery either pre-litigation or pre-judgment to determine the prospects for collecting a judgment would be prohibited. *Id.* Thus, a Chapter 7 trustee would proceed at some risk, and that risk would factor heavily in the cost/benefit analysis undertaken before litigation is commenced.

The Trustee asserts that by not pursuing small preferences, the Chapter 7 trustees are ignoring the requirements of the Code. The Trustee's criticism of his Chapter 7 trustee colleagues is unfounded. The Code allows but does not compel the pursuit of preferential transfers of not less than $600 in consumer cases. The $600 threshold was set in 1984 and has not been raised since. There is no similar threshold amount limiting the collection of receivables or fraudulent conveyances or setting minimal values for assets which can be sold. Nevertheless, Chapter 7 trustees routinely abandon all types of small assets because they are burdensome and the collection or sale of the assets will not yield any benefit to the estate. In doing so, the trustees are furthering the purposes of the Code and conserving the limited resources of the courts. *See Taxman*, 49 F.3d at 315; *Minich*, 386 B.R. at 729-30. Chapter 7 trustees may not ignore the fact that litigation is expensive and must not pursue litigation absent a reasonable expectation that, after expenses, net assets will be available to pay a meaningful distribution to unsecured creditors. *Id.* The practice of Chapter 7 trustees abandoning small assets must be considered in conducting the hypothetical liquidation analysis in Chapter 13 cases. Where it is likely that a Chapter 7 trustee would abandon an asset, the value of the asset in the liquidation analysis calculation is zero.

Notwithstanding the strong likelihood that a Chapter 7 trustee would abandon the preference claims at issue here, the Trustee says that he wants an evidentiary hearing. It is difficult to imagine what evidence he could present to change the result here. But, if he has evidence to present, the Court

will listen. An evidentiary confirmation hearing will be set.[2]

### B. Chapter 13 Attorney Fees Are Not Part of the
### Best Interests of Creditors Test Calculation

Debtors argue that even if the Trustee's calculations are sustained, they are paying $2700 to

their attorney through their Plan and that amount should be considered in determining whether they

have met the best interests of creditors test. They assert that the payment of their Chapter 13 attorney

fees is an administrative claim which should be deducted from any hypothetical liquidation amount.

Current case law does not support their position.

In 2004, the Supreme Court held that a Chapter 7 debtor's attorney could not be compensated

from a debtor's estate for services rendered to the debtor. *Lamie v. U.S. Trustee*, 540 U.S. 526, 537-

39 (2004).[3] Prior to that decision, some courts included potential Chapter 7 debtor's attorney fees in

---

[2] The Debtors have the burden of proof of establishing that all criteria for confirmation have been met. *See In re Lewis*, 459 B.R. 281, 289-90 (Bankr. N.D. Ill. 2011). But, they may meet their burden on the best interests of creditors test by disclosing the preferential payments. The issues about what costs would be incurred to pursue the preferences and whether a Chapter 7 trustee would attempt to collect the preferences are, in large measure, matters of law and the established procedures of this Court. It would serve no purpose to require the Debtors to prove that Chapter 7 trustees must do their own noticing when that obligation is posted on the Court's website. Thus, the burden will shift quickly to the Trustee, and the evidentiary hearing is being set because he suggests that he has evidence to present.

[3] *Lamie* does allow for the payment of a Chapter 7 debtor's attorney if the Chapter 7 trustee employs the attorney for specific matters. *Lamie*, 540 U.S. at 537. And, if a case were converted from Chapter 11 to Chapter 7 and a prior fee award was unpaid at the time of conversion, *Lamie* does not prohibit that award from being paid in the Chapter 7 case as an administrative expense. *See* 11 U.S.C. §726(b). But, the Debtors' suggestion that the hypothetical liquidation analysis should incorporate the assumption that the Chapter 7 liquidation occurs after conversion from Chapter 13 and thereby includes the payment of Chapter 13 fees as an administrative expense is not supported by any authority including *Lamie*. If a particular case involved prior conversions, the facts of that case would be incorporated into the assumptions for the analysis in that case. But, a prior conversion after the allowance of a fee award is not the type of fact which should be routinely incorporated into the analysis when, as here, the actual case facts do not support the assumption.

their Chapter 13 hypothetical liquidation analysis. *See, e.g., In re Heib*, 88 B.R. 1019, 1021 (Bankr. D.S.D. 1988). Post-*Lamie*, however, no compelling authority exists to include a debtor's attorney fees in the analysis. To the contrary, even pre-*Lamie* decisions generally rejected the inclusion of Chapter 13 expenses in the calculation.

In working through the Chapter 7 liquidation analysis, it is only the Chapter 7 administrative expenses which are deducted, not the combined Chapter 7 and Chapter 13 expenses. *See In re Dewey*, 237 B.R. 783, 788 (10th Cir. BAP 1999). Unsecured creditors in the Chapter 13 case must receive as much as those creditors would receive in a Chapter 7 case without a reduction for the additional costs associated with the Chapter 13 case. *Id.* Attorney fees awarded in a Chapter 13 case cannot consume the funds which should be paid to unsecured creditors under the best interests of creditors test. When a plan is proposed which proposes to pay a debtor's attorney fees in lieu of a required dividend to unsecured creditors, the plan does not meet the best interests of creditors test and cannot be confirmed. See 11 U.S.C. §1325(a)(4); *In re Lasica*, 294 B.R. 718, 723 (Bankr. N.D. Ill. 2003). The Debtors' proposed payment of their attorney fees through their Plan will not be considered as a payment which satisfies the best interests of creditors test.

## IV. Conclusion

The best interests of creditors test requires a hypothetical liquidation analysis to be conducted to determine the estimated amount which would be distributed to unsecured creditors if the Debtors' estate were liquidated under Chapter 7. In making the analysis, the parties must take into consideration the true costs of liquidation and all of the expenses associated with administering Chapter 7 estates. Chapter 7 trustees are not required to collect every non-exempt penny from debtors or to liquidate every possible available asset. In fact, they are discouraged from doing so if the end

result of such activity is not a meaningful distribution to unsecured creditors. *See Minich*, 386 B.R. at 728-29.

Whether the Trustee agrees as a matter of principle or policy with the manner in which Chapter 7 cases are administered is not the issue here. Likewise, the Trustee's view of what he thinks should occur in Chapter 7 cases is not relevant. How Chapter 7 cases are actually administered is relevant. And, whether a dividend to unsecured creditors would be available if the case were administered in accordance with the routine practices of the Chapter 7 trustees in the Springfield Division is the standard to be applied. The Trustee will be given an opportunity to present evidence on the relevant issues.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###